994 P.2d 1059

STATE of Idaho, Plaintiff–Respondent,

v.

Christopher T. SHANAHAN,
Defendant–Appellant.

No. 23965.

Court of Appeals of Idaho.

Dec. 1, 1999.

Rehearing Denied Jan. 3, 2000.

Robert L. Crowley, Jr., Rigby, for appellant.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison A. Stieglitz argued.

PERRY, Chief Judge.

Christopher T. Shanahan appeals from the judgments of conviction and concurrent unified life sentences, with thirty-five years fixed, for first degree murder, I.C. § 18–8003(a), and ten years fixed for robbery, I.C. § 18–6501. Shanahan also appeals from the denial of his I.C.R. 35 motion. For the reasons set forth below, we affirm.

## I.

### BACKGROUND

According to Shanahan's testimony at the trial of one of his co-defendants, Thomas P. Lundquist, Shanahan had spoken often of his desire to join a gang and believed that one way to become a member of a gang was to shoot someone. At a party on the evening of

November 9, 1995, Shanahan discussed with several of his friends his plan to run away to Las Vegas, Nevada, and join a gang. Shanahan also shared his plan to rob the Grant store and, if necessary, shoot the clerk. In an effort to dissuade Shanahan from his proposed course of action, his friends offered Shanahan money for his trip to Las Vegas. However, Shanahan refused their offer.

The next day, Shanahan, Lundquist and Benjamin Jenkins agreed to run away to Las Vegas. In preparing for that trip, Jenkins and Shanahan obtained three guns from Jenkins' home. The weapons included a double-barrel shotgun, a single-barrel shotgun and a .22 caliber rifle. After retrieving the weapons from Jenkins' home, the three proceeded to Lundquist's residence. At Lundquist's home, ammunition for the weapons was procured, and Shanahan obtained gloves and two gasoline cans.

Also at Lundquist's residence, Shanahan and Jenkins sawed off the barrels and the stocks of the guns. The weapons were test fired after they were altered. One of the shotguns failed to operate properly. Therefore, after leaving the Lundquist residence, the three individuals went back to Jenkins' home where Shanahan and Jenkins obtained another weapon. Shanahan then drove the three in his car to the Grant store. Shanahan testified that all three individuals participated in a discussion regarding the robbery of the store, what each person's role would be, and the possible shooting of the clerk. Shanahan agreed that he would enter the store and shoot the clerk.

After waiting for a delivery person to leave, Shanahan drove to the fuel pumps located at the store. After filling the car and two gas cans and waiting for another individual to leave, Shanahan signaled to Jenkins that he should to go into the store. Jenkins entered the store. Shanahan put on the gloves, so as not to leave fingerprints at the scene, picked up the .22 caliber sawed-off rifle, and entered the store. Shanahan moved down the aisle behind where the store clerk, Fidela Tomchak, was working. Shanahan stood behind Tomchak, lifted the gun,

hesitated for a minute, then raised the gun again and fired, killing Tomchak. Shanahan went around to where the victim lay, looked at her, and then checked the store for other witnesses. Finding none, Shanahan went to the cash register, put the murder weapon on the counter, removed cash and cigarettes, and ran out of the store. Realizing that he left the murder weapon inside the store, however, Shanahan returned to the store to retrieve the rifle. After again leaving the store, Shanahan got into his car and the three individuals left the scene, driving to Las Vegas.

Eventually, all three individuals were apprehended. Shanahan was charged with first degree murder and robbery.[1] Claiming that Shanahan had used a firearm in the commission of the crimes, the state alleged a sentencing enhancement. Pursuant to a plea agreement, Shanahan pled guilty to first degree murder and robbery, and the state dismissed the firearm enhancement. According to Shanahan's testimony, under the terms of the plea agreement, the state agreed not to pursue the death penalty and agreed to recommend that Shanahan receive concurrent sentences. After pleading guilty, Shanahan filed a motion requesting that he be sentenced pursuant to the Juvenile Corrections Act. The district court denied the motion. A presentence investigation report was prepared and testimony was presented at a sentencing hearing. The district court issued extensive findings of fact and sentenced Shanahan to concurrent unified life terms, with thirty-five years fixed for first degree murder and ten years fixed for robbery. Shanahan filed an I.C.R. 35 motion for reduction of the sentences, which the district court denied. Shanahan appeals.

## II.

## ANALYSIS

### A. Juvenile Corrections Act

■ After entering his guilty pleas, Shanahan filed a motion requesting that he be sentenced as a juvenile pursuant to the Juve-

---

1. Although fifteen years old at the time of the commission of these crimes, Shanahan was automatically prosecuted as an adult. *See* I.C. § 20-509(1).

nile Corrections Act. He asserted that adult sentencing would be inappropriate considering his age, vulnerability and best interests. The district court denied the motion. Shanahan argues that the district court abused its discretion when it denied his motion.

Idaho Code Section 20–509(4) states:

The sentencing judge of any juvenile convicted pursuant to this section may choose to sentence the convicted person in accordance with the juvenile sentencing options set forth in this act, if a finding is made that adult sentencing measures would be inappropriate.

Shanahan asserts that the district court failed to give proper weight to his age, lack of maturity, life circumstances, and depression when it made the decision to sentence him as an adult. However, in order to sentence Shanahan as a juvenile, the district court was required to make a specific finding, not that sentencing Shanahan as a juvenile would be *more* appropriate but, that "adult sentencing measures would be *inappropriate*." I.C. § 20–509(4) (emphasis added).

In denying Shanahan's motion, the district court stated that it did not believe that sentencing Shanahan as a juvenile was appropriate or in Shanahan's best interests. Specifically, the district court commented that Shanahan "could not receive the proper type of incarceration ... for the crime that has occurred." Shanahan renewed his motion during the Rule 35 hearing, and the district court reconsidered its decision. After an extensive colloquy between the district court and Shanahan's counsel, the district court determined that sentencing Shanahan as a juvenile was "simply not a viable option under the circumstances of this case unless [it] were looking only at the rehabilitation and disregarding completely the other sentencing factors." The district court also noted that pursuant to the Juvenile Corrections Act, a four-year sentence was the maximum it could impose. *See* I.C. 20–520(q). The district court found such a sentence inappropriate for the crimes committed in this case.

Thus, based on the record before it, this Court cannot say the district court abused its discretion when it denied Shanahan's motion to be sentenced as a juvenile.

## B. Cruel and Unusual Punishment

■ Shanahan next contends that the concurrent unified life sentences, with thirty-five years fixed for first degree murder and ten years fixed for robbery, constitute cruel and unusual punishment. Therefore, he argues that the sentences violate both the United States Constitution and the Idaho Constitution.

■ When reviewing whether a sentence imposed under the Uniform Sentencing Act constitutes cruel and unusual punishment, this Court treats the minimum period of incarceration as the duration of confinement. *State v. Matteson,* 123 Idaho 622, 626, 851 P.2d 336, 340 (1993); *State v. Daniel,* 127 Idaho 801, 804, 907 P.2d 119, 122 (Ct.App. 1995). Therefore, the Court will analyze only whether the fixed portion—thirty-five years—of Shanahan's concurrent sentences violates the state and federal constitutions.

■ The Idaho Supreme Court, in *State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992), recognized the proportionality test under the Eighth Amendment, as dictated by *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) and modified by *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Hence, it is the modified test as stated in *Brown* that is the current legal standard for review of a claim of cruel and unusual punishment in Idaho. *State v. Robertson,* 130 Idaho 287, 288, 939 P.2d 863, 864 (Ct.App.1997). As the *Brown* Court stated:

We limit our proportionality analysis to death penalty cases and, under the Idaho Constitution ... to those cases which are "out of proportion to the gravity of the offense committed" in the cruel and unusual punishment setting similar to the "grossly disproportionate" analysis of the [E]ighth [A]mendment urged by Justices Kennedy, O'Connor, and Souter in *Harmelin.*

*Brown,* 121 Idaho at 394, 825 P.2d at 491. Therefore, this Court must first make a threshold comparison of the crime committed and the sentence imposed to determine

whether the sentence leads to an inference of gross disproportionality. *Robertson*, 130 Idaho at 289, 939 P.2d at 865. The burden of demonstrating that a sentence is cruel and unusual is on the person asserting the constitutional violation. *State v. Clay*, 124 Idaho 329, 332, 859 P.2d 365, 368 (Ct.App.1993).

Shanahan pled guilty to first degree murder. Pursuant to a plea agreement, the state agreed not to seek the death penalty and, thus, the maximum penalty Shanahan faced in this case was fixed life imprisonment. I.C. § 18–4004. He also pled guilty to robbery, the permissible penalty for which is not less than five years, extending to life. I.C. § 18–6503. Shanahan was sentenced to concurrent unified life terms, with thirty-five years and ten years fixed. He argues that these sentences "are out of all proportion to the gravity of the offenses committed."

The facts of this case show that Shanahan spoke of killing the victim on the day before the homicide and, although later denying any racial motivation for the crime, referred to the victim as a "Mexican bitch." Shanahan sawed off the murder weapon so that it could be more easily concealed. When Shanahan entered the store, he had already decided that he would kill the victim, even though, by his own admission, it was unnecessary to do so to perpetrate the robbery. Shanahan walked up behind the victim and fatally shot her in the back of the head. After looking at the victim as she lay on the floor, Shanahan took money and merchandise and fled.

Based on the record before this Court, and given the premeditated and cold-blooded nature of this crime, we cannot say that the sentences are out of proportion to the gravity of the offenses committed or are such as to shock the conscience of reasonable people. Indeed, the seriousness of the crime to which Shanahan pled guilty, an execution-style homicide, mandates a punishment in the form of a substantial prison sentence. *State v. Whiteley*, 132 Idaho 678, 680, 978 P.2d 238, 240 (Ct.App.1999). *See also State v. Hooper*, 119 Idaho 606, 609, 809 P.2d 467, 470 (1991). Consequently, it is unnecessary to conduct any further proportionality review. *See Brown*, 121 Idaho at 394, 825 P.2d at 491.[2]

## C. Sentences

■ Shanahan further contends, that even if the sentences are not cruel and unusual, they constitute an abuse of discretion.[3] He argues that the sentences "are greater than are necessary to accomplish any and/or all" of the goals of sentencing.

■ An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

---

**2.** The Court also declines Shanahan's invitation to compare his sentences to those of his co-defendants. Such a comparison is unnecessary because Shanahan has failed to demonstrate that his sentence is grossly disproportionate to the crimes he committed. Moreover, each co-defendant played a different role and, in one case, pled guilty to a different crime than Shanahan. Thus, any comparison to Shanahan's co-defendants would be inappropriate.

**3.** Shanahan also contends that the district court erred when it considered his juvenile record during sentencing. However, the district court explicitly stated that it did not consider that record as an aggravating factor during sentencing. Thus, Shanahan's contention is unsupported by the record.

This case presents the senseless, cold-blooded, and unprovoked murder of Fidela Tomchak. On the night before the murder, Shanahan talked about robbing the store in order to finance his trip to Las Vegas. Shanahan also spoke of potentially killing the clerk. Shanahan was offered money from his friends to fund his trip, making the robbing of the store unnecessary. However, Shanahan refused the generosity of his friends. On the morning of the crime, Shanahan, Jenkins, and Lundquist drove to Jenkins' home and obtained three weapons. Shanahan participated in sawing off the weapons so that they would be easier to conceal. At one point, because Jenkins was going to ruin a weapon, Shanahan directed him to alter another gun, while Shanahan finished sawing off the weapon correctly. Shanahan loaded the gun that he would eventually use in the murder.

Shanahan drove the group to the store. As the three individuals were discussing the role each would take in the robbery, Shanahan agreed to be one of those to go into the store and the one to shoot the clerk. After arriving at the store, Shanahan filled up his car and two cans with gasoline waiting for possible witnesses to leave. He then told Jenkins to go into the store because the plan called for Jenkins to distract the clerk so that she could not activate any alarm that might have been present. Before following Jenkins into the store, Shanahan put gloves on so that he would not leave fingerprints at the scene. Also before entering the store, Shanahan had determined that he would kill the clerk, even though it was unnecessary to do so. Shanahan entered the store, concealing the rifle behind his legs. He walked to within three feet of the victim. He raised the gun, lowered it, then raised it again and fired into the back of Tomchak's head, killing her. Shanahan walked over to the victim and looked at her. Shanahan then searched the store for other witnesses, testifying that if he found any other people in the store, they would also have been killed. Finally, Shanahan went to the cash register and took money and cigarettes. He then fled the scene.

Shanahan does not argue that the district court had insufficient information before it when it imposed the sentences in this case, nor does he contend that the district court ignored any evidence presented. Shanahan argues that the district court should have given greater consideration to his age, his immaturity, and his mental condition. When it imposed the sentences in this case, the district court specifically considered the testimony of Dr. Heinbecker, a psychiatrist, who testified during the sentencing hearing. As the district court set forth in its sentencing memorandum, Dr. Heinbecker stated that Shanahan's thinking was "immature and uninformed" and that Shanahan had "no comprehension of the gravity of killing someone." According to Dr. Heinbecker, Shanahan, at the time of sentencing, still did not fully appreciate the seriousness of the crime. The district court also specifically noted Shanahan's life history—his parents' divorce, his lack of a role model and his low self-esteem. Finally, the district court noted that, although Shanahan was suffering from depression at the time of the crime, he was capable of distinguishing between right and wrong and had the ability to conform his behavior to societal standards.

Moreover, the district court extensively addressed the four factors of sentencing when it imposed the sentences in the instant case. Based on Shanahan's testimony and demeanor while testifying at his co-defendant's trial and the testimony of Dr. Heinbecker during sentencing, the district court found that a "substantial period of incarceration is necessary to protect society from any further violence." The primary consideration in sentencing is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end. *State v. Hunnel*, 125 Idaho 623, 873 P.2d 877 (1994); *State v. Pederson*, 124 Idaho 179, 857 P.2d 658 (Ct.App.1993). Therefore, the district court properly considered the paramount goal of sentencing. Under the facts of this case, this consideration alone would be sufficient to support the district court's sentencing decision. *See Simons v. State*, 116 Idaho 69, 77, 773 P.2d 1156, 1164 (Ct.App. 1989) ("A sentence need not serve all of [the]

goals; in appropriate circumstances, one may be sufficient.").

The district court also addressed the goal of deterrence. Although it questioned whether anyone other than Shanahan would be deterred by the sentences it imposed, the district court correctly noted that first degree murder and robbery "cannot be tolerated" by society and that "those who may contemplate such actions must be reminded of the severe sanctions which will surely follow." The district court next addressed Shanahan's rehabilitative potential, finding that "there is hope" that Shanahan may eventually become a contributing member of society. Thus, the district court determined that a fixed life sentence was inappropriate. Finally, with regard to punishment, the district court stated that Shanahan's actions "require severe punishment even considering his age."

Although the sentences in the instant case are severe, the Court cannot hold that they are excessive under any reasonable view of the facts. Therefore, based on the record before it, this Court concludes that the district court did not abuse its discretion.

**D. Rule 35**

Finally, Shanahan argues that the district court abused its discretion when it denied his I.C.R. 35 motion. A motion to reduce an otherwise lawful sentence under Rule 35 is addressed to the sound discretion of the trial court. *State v. Robertson*, 130 Idaho 287, 289, 939 P.2d 863, 865 (Ct.App. 1997). Such a motion is essentially a plea for leniency, which may be granted if the sentence originally imposed was unduly severe. *State v. Lopez*, 106 Idaho 447, 450, 680 P.2d 869, 871 (Ct.App.1984). The denial of a motion for reduction under Rule 35 will not be disturbed on appeal absent a showing that the court abused its sentencing discretion. *Robertson*, 130 Idaho at 289, 939 P.2d at 865. The criteria for examining rulings denying the leniency requested are the same as those applied in determining whether the original sentence was unreasonable. *Lopez*, 106 Idaho at 450, 680 P.2d at 872. The criteria for examining the original sentences in the instant case are set forth above.

If the sentence is not excessive when pronounced, the defendant must show that it is excessive in view of new or additional information presented with the motion for reduction. *State v. Hernandez*, 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct.App.1991). If the defendant fails to make this showing, we cannot say that denial of the motion by the district court represents an abuse of discretion. *Id.* at 117–118, 822 P.2d at 1014–15.

In this case, Shanahan did not provide any new or additional information in support of his Rule 35 motion. Because we have already determined that the sentences were not excessive when originally pronounced, and because no new or additional information was presented to the district court in connection with the Rule 35 motion, we cannot say that the district court abused its discretion in denying Shanahan's request for a modification of the sentences.

### III.

### CONCLUSION

We hold that the district court did not abuse its discretion when it denied Shanahan's motion to be sentenced as a juvenile. Moreover, this Court holds that concurrent unified life sentences, with thirty-five years fixed for first degree murder and ten years fixed for robbery, do not constitute cruel and unusual punishment under the facts of this case. Finally, we hold that the sentences are not excessive and that the district court did not abuse its discretion when it denied Shanahan's Rule 35 motion for reduction of those sentences. Therefore, the concurrent unified life sentences, with thirty-five years fixed for first degree murder and ten years fixed for robbery, are affirmed.

Judge LANSING and Judge SCHWARTZMAN concur.